UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
AUG 1 9 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

GERMAINE VESTER BROWN,

Plaintiff,

v.

25-CV-421 (JLS)

NIAGARA FALLS POLICE DEPARTMENT; SHANLEY; PROIETTI; MILES; PETER WYDYSH; TARNOWSKI; and WILDT,[1]

Defendants.

## DECISION AND ORDER

*Pro se* Plaintiff Germaine Vester Brown is a prisoner confined at the Elmira Correctional Facility and has filed this action seeking relief under 42 U.S.C. § 1983, arising from a January 15, 2025 arrest by officers of the Niagara Falls Police Department. Dkt. 1. Brown also seeks permission to proceed *in forma pauperis* ("IFP") and has filed the required authorization. Dkt. 4.

Because Brown meets the requirements of 28 U.S.C. § 1915(a), he is granted permission to proceed IFP. The Court therefore screens his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)-(b).

For the below reasons, Brown's claims against Wydysh in his official capacity for monetary damages, the Niagara Falls Police Department, and his Fourteenth

[1] The Clerk of Court is directed to amend the caption as it appears above.

Amendment claim arising from his inability to participate in a diversion program are dismissed without leave to amend. His remaining claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend as directed below.

## DISCUSSION

## I. LEGAL STANDARDS

### A. Review Under the IFP Statutes

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

### B. Pleading Standards

In evaluating a complaint, the court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint states a claim for

relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must contain sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (summary order) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Scott Phillip Lewis v. R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (summary order) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it]

cannot invent factual allegations that he [or she] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### C. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

### D. Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

## II. ALLEGATIONS[2]

Defendants Shanley, Proietti, Miles, Tarnowski, and Wildt are officers with the Niagara Falls Police Department. Dkt. 1 at 8. On January 15, 2025, Brown "was in [his] wife's car when [he] was approached by a Niagara Falls City Police officer." *Id.* at 14. Brown was having a diabetic reaction, which the officer mistook for him being intoxicated. *Id.* at 5. After Brown told the officer that he was not under the influence of alcohol or controlled substances, a field sobriety test was performed. *Id.* at 14. Brown was also given a breathalyzer test, and the reading

[2] The complaint includes attachments. To the extent that the attachments are relevant to the incidents described in the complaint, the Court will consider them. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). The facts alleged in the complaint are sparse, and the most detailed account of what transpired is found in the attachments to the complaint.

was 0.00. *Id.* The officer, however, told Brown that he had failed the test, and placed him under arrest. *Id.*

Brown was transported to the Niagara Falls Memorial Hospital and was forced to undergo a blood test without his consent. *Id.* The officer told Brown that he had given the officer consent to order the blood draw, but Brown denies that he gave consent. *Id.*

Brown was then transported to the police station, where "[t]he officers . . . beat[ ] [him] up" while handcuffed, *id.* at 5, 11, 14, and left him in a cell for approximately 30 hours without having access to his insulin medication. *Id.* at 14. No one checked his glucose or provided "any other medical attention to find out if that [was] why [he] was so incoherent and disoriented." *Id.* Instead, they assumed that he was under the influence of drugs or alcohol despite his request for insulin and their knowledge from prior encounters that he was diabetic. *Id.* at 14-15.

Brown also alleges that the officers and district attorneys tried to stop him from participating in a diversion program. *Id.* at 15-16. Specifically, District Attorney Peter Wydysh ("Wydysh") "set[ ] [him] up" and officers tampered with evidence. *Id.* at 11.

Brown does not indicate what he was charged with; nor does he identify the disposition of the charges. He requests monetary damages. *Id.* at 6.

## III. ANALYSIS

### A. Eleventh Amendment

"When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988). To the extent that Brown names Wydysh in his official capacity, Dkt. 1, at 2, it "is, in effect, a suit against the state itself[.]" *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir. 1993).

"Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). New York has not waived its Eleventh Amendment immunity to suit under Section 1983, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977), and state sovereign immunity has not been abrogated by Section 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990).

The Eleventh Amendment bar extends to state officials sued in their official capacities for monetary damages. *Graham*, 473 U.S. at 169. Accordingly, Brown's claims against Wydysh in his official capacity are dismissed.[3] Because amendment would be futile, the dismissal is without leave to amend.

---

[3] "Whether Eleventh Amendment immunity 'constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense' has not yet been decided by the Supreme Court or [the Second Circuit]." *Allco Fin. Ltd.*

## B. Municipal Liability

The Niagara Falls Police Department is an "arm of the City . . . and does not have a legal identity separate and apart from the City." *Forbes v. City of Rochester*, 612 F. Supp. 3d 159, 170 (W.D.N.Y. 2020). Therefore, the Niagara Falls Police Department is dismissed as a defendant from this action without leave to amend.

Brown has also sued individual Niagara Falls Police Department officers—Shanley, Proietti, Miles, Tarnowski, and Wildt—in their official capacities,[4] which "is functionally equivalent" to a suit against their employer—the City of Niagara Falls. *Baines v. Masiello,* 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (citing, *inter alia*, *Graham*, 473 U.S. at 166).

A municipality such as the City of Niagara Falls cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a

---

*v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (citation modified). Because "the Second Circuit has routinely affirmed such dismissals based on a lack of subject-matter jurisdiction," the Court will treat it as a dismissal for lack of subject-matter jurisdiction, which must be without prejudice. *Canfield v. New York*, No. 6:24-CV-1357 (GTS/TWD), 2025 WL 1288747, at *2 (N.D.N.Y. May 5, 2025).

[4] Where, as here, "a *pro se* litigant does not specify in what capacity the individual defendants are being sued, courts generally 'liberally construe the complaint as alleging both official and individual capacity claims.'" *Anderson v. Pedalty*, No. 14-CV-00192, 2015 WL 1735192, at *3 (W.D.N.Y. Apr. 16, 2015) (quoting *McCloud v. Kane*, 491 F. Supp. 2d 312, 316 (E.D.N.Y. 2007)).

constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

An official policy or custom can be established by showing:

> a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Kurmangaliyev v. City of New York*, 2023 WL 8654023, at *2 (E.D.N.Y. Dec. 14, 2023) (citing cases).

Brown's claims against Shanley, Proietti, Miles, Tarnowski, and Wildt in their official capacities are dismissed with leave to amend. If Brown opts to replead these claims in an amended complaint, he must allege that his constitutional rights were violated pursuant to a policy or custom of the City of Niagara Falls.

### C. Prosecutorial Immunity

The Supreme Court has held that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). This extends to even "allegedly conspiring to present false evidence at a criminal trial." *Id.* Absolute immunity applies "even when the result

may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)).

Nevertheless, "the broad reach of absolute prosecutorial immunity . . . does not extend to 'those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings.'" *Stokes v. Wayne County*, No. 6:23-CV-06482 EAW, 2024 WL 4262276, at *10 (W.D.N.Y. Sept. 23, 2024) (quoting *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995)).

Based on the allegations of the complaint, Wydysh's conduct, even if improper, was related to his role as an advocate and was within his prosecutorial function, thereby entitling him to prosecutorial immunity for the claims asserted against him in his individual capacity. *See Anilao*, 27 F.4th at 864 ("[A]bsolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is *properly* within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it.'" (alteration in original) (quoting *Dory*, 25 F.3d at 83)). The Court, however, will permit Brown an opportunity to amend the complaint to allege sufficient facts that Wydysh acted outside the scope of his role as prosecutor and, thus, was not shielded by absolute immunity. *See Morales v. Weiss*, 569 F. App'x 36, 37 (2d Cir. 2014) (summary order) ("[T]he district court erred in dismissing . . . claims against [the] prosecutors . . . without affording plaintiff the opportunity to amend his pro se complaint to allege

sufficient facts that those defendants acted outside the scope of their roles as prosecutors and, thus, were not shielded by absolute immunity.").

**D. False Arrest**

"A [Section] 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] is substantially the same as a claim for false arrest under New York law." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (alteration in original) (*quoting Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021)). "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)). The existence of probable cause renders an arrest privileged. *See Singh v. Petro*, No. 21-CV-813-LJV-JJM, 2025 WL 885594, at *5 (W.D.N.Y. Mar. 21, 2025) (citing *Ashley*, 992 F.3d at 136). Consequently, "[p]robable cause to arrest is a complete defense to a false arrest claim." *Alexander*, 132 F.4th at 156 (quoting *Kee*, 12 F.4th at 158).

Generally, "probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis omitted) (quoting *Weyant v. Okst,* 101

F.3d 845, 852 (2d Cir. 1996)). A finding of probable cause is not defeated simply because "it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994).

Brown sufficiently alleges the elements of a false arrest claim at this stage. He indicates that he was arrested for unspecified crimes appearing to relate to driving while intoxicated, when, in fact, he was suffering from a diabetic episode, and that the arresting officers were aware of his condition. Dkt. 1 at 5, 14. He also alleges that he was subjected to a breathalyzer test, which revealed no alcohol in his system. *Id.* at 14. These allegations call into question a determination that there was probable cause to arrest Plaintiff.

Lacking, however, is any indication who, among the five officers named as defendants, was personally involved in Brown's arrest. While Brown alleges that "*all*" defendants are responsible for the false arrest, Dkt. 1 at 5, his allegations point to only one officer participating in his arrest. *Id.* at 14.[5] The false arrest claim is therefore dismissed with leave to amend. Any amended complaint should identify each defendant who participated in Brown's arrest and identify their role.

Additionally, any amended complaint should identify what Brown was arrested for and the status of the criminal charge(s). These added factual

---

[5] A letter from the Niagara Falls Police Department attached to complaint suggests that Shanley was the arresting officer, but it is not conclusive. Dkt. 1 at 8. If Shanley was in fact the arresting officer, this may be clarified in the amended complaint.

allegations are necessary because damages in § 1983 cases are barred if a judgment in the plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

### E. Excessive Force

Brown alleges that the "officers also use[d] excessive force when [he] was arrested[,] [and was] beat[ ] up at the station." Dkt. 1 at 5. At the time, he alleges that he was handcuffed and "no threat to officers." *Id.* at 11.

Because the use of force appears to have occurred after Brown's arrest but before his arraignment, it is analyzed under the Fourth Amendment. *See Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989) ("[T]he Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer."); *Cornelius v. Luna*, No. 3:20-CV-01047 (JCH), 2024 WL 6859647, at *4 (D. Conn. June 13, 2024) ("[M]ost courts in this Circuit have analyzed claims of excessive force arising after arrest but prior to arraignment under the Fourth Amendment." (citing cases)), *reconsideration denied*, 2024 WL 4116564 (D. Conn. Sept. 9, 2024), *appeal dismissed*, No. 24-1859-CV, 2025 WL 2753713 (2d Cir. Sept. 29, 2025).

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citing *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.

1999)). As a result, these claims are subject to the Fourth Amendment's objective "reasonableness" standard. *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).

"[A] government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest" or a detention. *Id.* In making this determination, courts look to the following factors, which include

> (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect pose[d] an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight., (4) the need for the application of force, (5) the relationship between the need and the amount of force that was used, (6) the extent of the injury inflicted, and (7) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (citation modified).

Brown's allegations that he was assaulted while handcuffed and compliant raise a colorable claim of excessive force. Although the complaint attributes the use of excessive force, as well as a variety of other claims, to "all" defendants, Dkt. 1 at 5, some identification of the conduct allegedly attributable to each defendant is necessary to state a claim against a particular defendant.[6]

Federal Rule of Civil Procedure 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum,

---

[6] A letter from the Niagara Falls Police Department suggests that Prioietti, Miles, Tarnowski, and Wild were alleged to have been involved in the use of force and/or deliberate indifference incidents. Dkt. 1 at 8. Plaintiff may clarify this in an amended complaint.

that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). A complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct . . . fail[s] to satisfy this minimum standard[.]" *Id.* Therefore, this claim is dismissed with leave to file an amended complaint identifying the alleged conduct attributable to each defendant.

### F. Deliberate Indifference to a Serious Medical Need

Brown's deliberate indifference to a serious medical need claim is analyzed under the Due Process Clause of the Fourteenth Amendment. *See Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (summary order) (addressing a deliberate indifference to medical need claim under the Fourteenth Amendment). A Fourteenth Amendment medical indifference claim requires a plaintiff to plausibly allege two elements: an objective prong demonstrating the existence of a "serious medical need", and a "*mens rea*" prong, that defendants "acted with deliberate indifference to such needs." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

The serious medical need element "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.* Under the *mens rea* prong, "something more than mere negligence" is necessary. *Id.* at 87

(quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). Deliberate indifference must be "shown by something akin to recklessness" but "does not require proof of a malicious or callous state of mind." *Id.* Thus, a plaintiff can "allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.*

"[D]iabetes is a sufficiently serious medical condition to meet the objective prong." *Beatty v. Davidson*, 713 F. Supp. 2d 167, 174 (W.D.N.Y. 2010) (citing cases). Brown's allegations that officers failed to test his blood sugar and denied him insulin for 30 hours—despite their awareness that he was a diabetic and suffering adverse consequences from the lack of insulin—is also sufficient to meet the subjective prong. Dkt. 1 at 13-14.

Again, however, Brown fails to identify what role, if any, each defendant played in the alleged deliberate indifference to his medical condition. This claim is therefore dismissed with leave to amend.

### G. Malicious Prosecution

To state a malicious prosecution claim under Section 1983, a plaintiff must allege "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, (4) actual malice, [and] (5) a sufficient post-arraignment liberty restraint to implicate the

plaintiff's Fourth Amendment rights." *Alexander*, 132 F.4th at 158 (citation modified). "[U]nlike Fourth Amendment claims of false arrest, in the Fourth Amendment malicious prosecution context, probable cause must support *each* charge brought by the prosecution." *Id.* (citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024)). A grand jury indictment creates a rebuttable presumption that probable cause exists to prosecute. *See McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006).

Brown fails to identify what he was charged with or the disposition of the charges. Without satisfying the favorable termination element, Brown has failed to state a malicious prosecution claim. Accordingly, the claim is dismissed, but with leave to amend. Any amended complaint should also include allegations identifying the personal involvement of each defendant against whom Plaintiff brings the claim.

### H. Due Process Claim: Diversion Program

Brown alleges that he was not permitted to participate in a diversion program due to the false allegations against him. Dkt. 1 at 13, 15-16. To the extent that Brown claims that his Fourteenth Amendment due process rights were violated because he was not permitted to participate in the diversion program, that is not a cognizable claim under Section 1983. *See Ruffin v. New York State Parole*, 22-CV-185-LJV, 2023 WL 2480584, at *3 n.3 (W.D.N.Y. Mar. 13, 2023) (quoting *Bonano v. Staniszewski*, 12 CV 5879 (DLI)(LB), 2016 WL 11263168, at *8 (E.D.N.Y. Sept. 2, 2016), *report and recommendation adopted*, 2017 WL 4220402 (W.D.N.Y.

2017), *appeal dismissed*, No. 17-4163, 2018 WL 3814299 (2d Cir. May 30, 2018))). Because further amendment of this claim would be futile, Brown's Fourteenth Amendment due process claim arising from his inability to participate in the diversion program is dismissed without leave to amend.

### I. Warrantless Search

Liberally interpreting the complaint, Brown raises a Fourth Amendment illegal search claim related to the taking of his blood sample at the hospital without consent or probable cause. Dkt. 1 at 14.

"Although blood tests are 'searches' under the Fourth Amendment, the Fourth Amendment only proscribes those searches that are unreasonable." *Luck v. Westchester Med. Ctr.*, No. 17-CV-9110 (NSR), 2020 WL 564635, at *12 (S.D.N.Y. Feb. 4, 2020) (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989); *Anthony v. City of New York*, 339 F.3d 129, 141-42 (2d Cir. 2003)). "A blood test at the direction of law enforcement with probable cause, exigent circumstances, and a reasonable examination procedure is not unreasonable." *Id.*

Brown has stated a colorable Fourth Amendment claim by alleging that the blood sample taken at the hospital was without his consent or probable cause. However, he has not identified which officer or officers were responsible for ordering the blood sample. This claim is therefore dismissed but with leave to amend.

### J. Failure to Intervene

Brown characterizes his claim as a "failure to protect." Failure to protect claims arise from the duty of prison officials "to protect prisoners from violence at

the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). There is no allegation that Brown was assaulted by a prisoner. Instead, the Court interprets the complaint as alleging a failure to intervene claim, which is based on the duty of law enforcement officers "to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

"An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer 'observes the constitutional violation and has sufficient time to act to prevent it.'" *Loftin v. City of New York*, No. 15-CV-5656 (MKB), 2017 WL 3614437, at *10 (E.D.N.Y. Aug. 21, 2017) (alteration omitted) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016)). The dismissal of all of the underlying constitutional claims requires dismissal of the failure to intervene claim. *Wieder v. City of New York*, 569 F. App'x. 28, 30 (2d Cir. 2014) (summary order) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim."). Brown may, however, replead this claim in an amended complaint. If he does so, the amended complaint shall identify which officers failed to protect him from which constitutional violations.

## CONCLUSION

For the reasons set forth above, Brown's claims against Wydysh in his official capacity for monetary damages, the Niagara Falls Police Department, and his Fourteenth Amendment claim arising from his inability to participate in a diversion

program are dismissed without leave to amend. His remaining claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim but with leave to amend. Brown may file an amended complaint by **October 5, 2026**, in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Brown is advised that an amended complaint **completely replaces** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint in this action.

Brown is further advised that he has been granted leave to amend only those claims addressed above. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases).

## ORDER

IT HEREBY IS ORDERED that Brown's application to proceed IFP, Dkt. 4, is GRANTED; and it is further

ORDERED that Brown's claims against Wydysh in his official capacity, claims against the Niagara Falls Police Department, and his Fourteenth

Amendment claim arising from his inability to participate in a diversion program are DISMISSED without leave to amend; and it is further

ORDERED that the remaining claims alleged in the complaint are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted but with leave to amend; and it is further

ORDERED that Brown may file an amended complaint as directed above **by October 5, 2026**; and it is further

ORDERED that the Clerk of Court shall send to Brown with this order, a copy of the Amended Complaint, a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Brown does not file an amended complaint by the deadline set forth above, the claims dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim will remain dismissed and the Clerk of the Court shall close this case as dismissed with prejudice without further order; and it is further

ORDERED that in the event the complaint is dismissed because Brown has failed to file an amended complaint, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the

Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Brown must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

Dated: August 19, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE